VITO MORALES v. THE STATE.

No. 9443.  Delivered November 18, 1925.

**Attempt at Burglary of a Private Residence—Accomplice Testimony—Corroboration Insufficient.**

Where, on a trial for an attempt to burglarize a private residence, the State relies for a conviction upon the testimony of an admitted accomplice, and the corroboration of such accomplice is only as to circumstances which are not inconsistent with appellant's innocence, the conviction must be set aside. Such corroboration is, in our judgment, too inconclusive as to appellant's connection with the crime to meet the demands of the law.

Appeal from the District Court of Austin County. Tried below before the Hon. M. C. Jeffrey, Judge.

Appeal from a conviction of an attempt to commit burglary of a private residence, penalty four years in the penitentiary.

The opinion states the case.

*Johnson Mattheia & Thompson,* for appellant.

*Sam D. Stinson,* State's Attorney, and *Nat Gentry, Jr.,* Assistant State's Attorney, for the State.

MORROW, PRESIDING JUDGE.—Attempt at burglary of the private residence of Paul Schmid is the offense; punishment fixed at confinement in the penitentiary for a period of four years.

Ella Schmid, wife of Paul Schmid, testified that while her husband was at work at his confectionery late at night, while her house was closed and without lights in it, she saw a man come to her bed-room window. She got her pistol. She saw a man raise the dining-room window and stick his head in it. She fired at him. He fell and she fired again. She fired at him as he fled, and called for help.

Brandenburg, the negro who was wounded by the shots fired by Mrs. Schmid, testified as a witness in behalf of the State, claiming in his testimony that the appellant and another Mexican were acting with him in the attempt to burglarize the Schmid residence. He said that he went to the depot expecting to take passage to his home; that he there saw the appellant and his Mexican companion sitting in a truck at the station. They suggested that he join them in burglarizing the Schmid residence, which was a block from the depot. According to his testimony, the three entered the yard. He and the other Mexican walked on the gallery. "This one came and slipped up on the gallery." The witness then claimed that he heard the appellant shake something which he thought was the door. From is testimony we quote:

"The other Mexican raised the window. He tried to get me to go in, and then he looked in, and then I backed off. * * * And then I got shot and ran, and that one there ran over me— this defendant here. He is the man that tried to work the door. The gun-shot hit me. * * * After the shot the two Mexicans ran towards the Union Station. I heard the woman holler. * * * I ran on to the Fairfield Hotel. * * * In just a few minutes Mr. Peak brought three Mexicans there, and I showed him which one it was."

When asked on cross-examination how many men she saw, Mrs. Schmid said:

"I saw only one at a time. The one I shot was the one that came to the dining-room window. The dining-room is on the same porch, where you step up in the house. There is a win-

dow there. * * * The man at the dining-room window was the one I shot. I was right close on this negro when I shot him. He did not get his head and shoulders inside the window. I shot when he raised up the window. * * * I saw him have his hands on the window; I saw him raising the window. He did not have on a big hat like that Mexican that was here today. He had a small hat. When I fired, I was right close up on him. * * * I could see this negro running off, and I shot two more times, but when he was lying on the porch. He was on that porch when I shot the second shot, and then he jumped up and ran off. I did not see anybody else run off from there.

"The first man that I saw, at the bed-room window, had a jumper on. He had a big hat, light-colored. I could not tell whether he was a white man, or Mexican or negro. I could not tell what he was."

On re-direct examination, she said:

"At the time I saw this man at the bed-room window, I did not hear somebody try to come into the door, try to unlock the door. Before this man came to the bed-room window, I heard somebody come to the door. * * * I heard them at the door."

The witness, Ben Balke, testified in behalf of the State, as follows:

"I was working at the Union Station. * * * While I was there, I heard a woman holler. The holler was in the direction of her house. * * * I see that Mexican sitting over there. I saw him. * * * When I saw them, this man and the other one were running, coming from the direction of Mrs. Schmid's house, running towards the depot. As they ran, I saw one of them sling his head back and look back. * * * The two Mexicans, this defendant here and the other one, went around the depot. I kept on loading the mail. I know this is one of the men. The man in jail here, who had on the big straw hat this evening, is the other one. * * * I identified them, this one and the one in jail, as being the Mexicans that I saw running from Mrs. Schmid's house immediately after I heard the woman holler.

"I have testified before; this is the third time I have testified in these cases. I stated today that my mind is clearer, and I have, since I testified in the examining court come to the conclusion that these are the right Mexicans. I was not right certain about it then. In other words, I have now thought the matter over. I never did tell Judge Castrop that I

knew both these Mexicans; I told him they were dressed like it."

Appellant denied that he was in company with the negro. He said he did not speak the English language; that he was a section hand; that he and his companion were knocking around town and went to the Katy depot; that he had only become acquainted with his companion and worked at the depot that day; that he owned no pistol and had none on the occasion. He denied running away from the house. He said that there were three in the company at the time of their arrest, that all three were put in jail.

Brandenburg claimed that he made a statement to Mr. Peak as soon as he reached the hotel in which he stated that there were three Mexicans with him; that shortly thereafter Mr. Peak brought three Mexicans, and that he (Brandenburg) identified the appellant as one of those who partook in the commission of the offense. Peak, it seems, was a constable at Sealy. He was not called as a witness.

Mrs. Schmid saw a man wearing a jumper and a big hat at her bed-room window, and a moment later saw a man at the dining-room window, which was near the bed-room window. She did not describe the man she saw at the dining-room window, but immediately shot him. He fell, and she fired at him twice more. He then got up and ran. She saw no other man with him at the window, nor as he ran away, though she was very near to the man she shot. The man shot was shown by the State's testimony to have been the negro, Brandenburg.

This is in conflict with Brandenburg, who claims that the Mexican was opening the window and that they both ran, and leaves the impression that he was struck by a shot fired at the Mexican who was opening the window.

We fail to find in the testimony of Mrs. Schmid any cogent testimony corroborating the testimony of Brandenburg to the effect that there were two other persons with him, and very little, if any, testimony supporting the inference that there was any one present at the time of the offense except Brandenburg. The testimony of Balke was to the effect that he heard a woman holler in the direction of the Schmid house and that he saw appellant and another Mexican running; that he afterwards found the appellant and another Mexican with a big hat on at the depot. The writer is of the opinion that this testimony falls short of meeting the requirements of the Statute touching the corroboration of an accomplice. Granting that the

testimony was sufficient to identify the appellant as one of the Mexicans whom he saw running, which is questionable, the mere circumstance that the appellant ran after hearing the shots or about the time the woman screamed, in the absence of other testimony connecting him or tending to connect him with the offense, in our judgment is too inconclusive as to his connection with the crime to meet the demand of the law. His running to the depot, if in fact he did, after the shooting would be a circumstance not inconsistent with his innocence. Moreover, the identity of the Mexican as coming from Balke's testimony is not conclusive. It is true that in his direct examination he said that he recognized the appellant. In his former testimony it was admitted by him that he did not claim to have recognized the appellant, but subsequently concluded that he was one of the Mexicans who ran to the depot. The evidence fails to show that the witness, Balke, had any previous acquaintance with or knowledge of the Mexicans. They were entire strangers to him so far as the record shows. At the time he claims to have seen them running, he did not know that an offense had been committed. This information came afterwards. The State's testimony develops that there was another witness, Peak, a constable, who was in a position to give testimony corroborating the witness, Brandenburg, but who was not called as a witness for the State. The State had notice of his purported knowledge touching the identity of the Mexicans but failed to use any diligence to procure his attendance, announced ready, and proceeded to trial without him. His absence, under the conditions prevailing, is of some weight as bearing upon the weakness of the corroborating testimony.

Upon the record before us, we do not feel warranted in permitting the judgment to stand. It is therefore reversed and the cause remanded.

*Reversed and remanded.*